```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION


THERESA L. BANKS,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )     No. 1:09 CV 88 DDN
                                     )
                                     )
 MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
```

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Theresa L. Banks for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act, 42 U.S.C. § 401, et seq. The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 6.) For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.


**I.   BACKGROUND**

Plaintiff was born in 1966. She graduated from high school and has worked as a checker, floral arranger, and laborer. (Tr. 146, 149.) On May 31, 2003, she applied for benefits, alleging a June 10, 2002 onset date due to spinal stenosis[1], hepatitis[2] C, and other liver problems. (Tr. 145.)

Plaintiff's applications were denied on July 30, 2003. (Tr. 106-09.) On April 13, 2005, an ALJ found that plaintiff was not under a disability as defined under the Act. (Tr. 78-85.) On August 22,

---

[1]Stenosis is a stricture of any canal or orifice. Stedman's Medical Dictionary 1832 (28th ed. 2006).

[2]Hepatitis is inflammation of the liver, usually from a viral infection, but sometimes from toxic agents. Stedman's, at 875.

2005, the Appeals Council remanded the case to an ALJ for further development and a new decision. (Tr. 69-71.) On November 28, 2008, following a hearing, an ALJ issued a new decision finding that plaintiff was not disabled at any time she met the earnings requirement of the Act, or at any time through the date of his decision. (Tr. 10-23.) On May 20, 2009, the Appeals Council denied her request for review. (Tr. 4-6.) Thus, the ALJ's decision stands as the final decision of the Commissioner. (Tr. 10-23.)

## II. MEDICAL HISTORY

On August 23, 2005, a ganglion[3] cyst was removed from plaintiff's right wrist. Her wounds healed nicely. (Tr. 298-305.)

On November 29, 2006, plaintiff saw Stephen Jordan, Ph.D., for a neuropsychological evaluation and possible disability determination. The evaluation revealed low average intellectual functioning, inconsistent control over concentration, but no memory impairment. Dr. Jordan opined the concentration problems would be consistent with both chronic liver disease and emotional distress. She presented symptoms of both chronic post-traumatic stress disorder and major depression, which had been partially addressed with medication, but remained obviously present. She exhibited classic fatigue of chronic liver disease. (Tr. 271-76.) Dr. Jordan diagnosed post traumatic stress disorder; major depression; and alcohol abuse in sustained remission. He assigned her a GAF[4] score of 50. (Tr. 272.)

---

[3]An aggregation of nerve cell bodies located in the peripheral nervous system. Stedman's, at 785.

[4]A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components. On the GAF scale, a score from 41 to 50 represents serious symptoms (such as thoughts of suicide, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (such as the inability to make friends or keep a job). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

On December 4, 2006, plaintiff saw Muhammad Salamat, M.D. for possible relapse of hepatitis C. Her blood titers, or measure of antigens, were extremely low but there were no other abnormalities on examination. (Tr. 187.) Dr. Salamat opined that her hepatitis C required close follow-up, but no additional treatment. (Tr. 188.) Hepatitis testing in August 2007 was negative. (Tr. 195.)

Plaintiff saw Thomas Satterly, Jr., D.O., on January 11, 2007 for complaints of spinal pain. She had normal range of motion in her joints and spine, as well as normal muscle strength and sensation. (Tr. 199-208.) Her gait and stance were normal. (Tr. 206.) Straight leg raising was negative. (Tr. 206.) An X-ray of her spine showed normal disc space height and normal joints. (Tr. 207.) An MRI showed an asymmetry at C4-5, but there was no spinal canal stenosis or ruptured discs. (Tr. 207.) She had an essentially normal cervical spine and her lumbar spine was normal. Dr. Satterly opined that she was able to do moderately strenuous or light duty type activities and that she did not have any findings that were consistent with anything that would cause her not to be able to work. On April 30, 2007, plaintiff saw Dr. Salamat for complaints of fatigue. Physical exam was normal. The plan was to repeat her blood work and possibly schedule a liver biopsy to check for damage from hepatitis C. (Tr. 189.)

On May 23, 2007, plaintiff began treatment for a relapse of hepatitis C. On June 6, 2007, she saw Dr. Salamat for follow up, complaining of mild nausea, headaches, and muscle and joint pain. She was given medication to relieve these symptoms. (Tr. 190.)

Plaintiff was hospitalized at Poplar Bluff Medical Center from August 14 to 17, 2007 for a high grade fever and back pain. (Tr. 229.) No infection was found, and it was suspected the fever could be related to her hepatitis or medications. Spinal MRIs showed mild degenerative changes in the cervical spine, no abnormality in the dorsal spine, and an essentially negative lumbar spine with a small indentation of the thecal[5] sac at L3-4 with no nerve root compression. (Tr. 249-50A, 267-69.)

---

[5]Relating to a sheath, especially a tendon sheath. Stedman's at 1970.

Plaintiff saw Dr. Salamat on November 1, 2007 for follow-up. He advised her about the response rate with retreatment for hepatitis C and that one year of treatment was more effective than six months. Because of the side effects of the treatment for hepatitis C, plaintiff wanted to think it over before she committed to a full year of treatment. She denied symptoms of depression but complained of anxiety. Xanax was prescribed. (Tr. 191.)

Plaintiff was seen on January 2, 2008 with worsening depression and suicidal ideation. She also complained of decreased appetite, weight loss, and muscle and joint pain. Her hepatitis treatment was stopped because of depression and suicidal ideation. She was encouraged to see a psychiatrist and reassured that her other symptoms would improve upon cessation of her hepatitis treatment. (Tr. 192.)

On January 23, 2008, plaintiff reported that her depression had improved, and that she no longer had suicidal ideation, although she was somewhat anxious. Her energy level had also improved. (Tr. 193.) On March 31, 2008, her hepatitis C was negative for three months after ceasing treatment. She denied any complaints and felt quite well after stopping her treatment. She was instructed not to drink alcohol. (Tr. 194.)

**Testimony at the Hearing**

On September 25, 2008, a hearing was conducted before an ALJ. Plaintiff testified at the hearing. (Tr. 467-86.) She testified that she is separated and that she and her three year-old daughter live with her parents. (Tr. 470.) She testified that she last worked five years ago.

Plaintiff testified that she was diagnosed with hepatitis C in 2002 and was currently in remission. She testified she has high blood pressure which is partially controlled with medication. She testified that she has been depressed most of her life and that depression is her "biggest" health problem. (Tr. 472, 483.) She testified that she feels hopeless and has breakdowns. She takes generic Prozac for her depression, a muscle relaxant for her back, and ibuprofen. (Tr. 475-76.)

Plaintiff testified that she does not have a social life outside of Sunday visits with her grandmother; that she does not drive, that she is not able to cook or clean the house; and that she does not have any friends or hobbies. She is able to grocery shop. (Tr. 477.) She testified that she has difficulty concentrating and remembering; that she has difficulty bending and squatting because of her lower back; and that she has trouble lifting because of her neck.

Plaintiff testified that she worked as a floral arranger for nine years. She quit floral arranging because she experiences neck and shoulder pain if she uses her arms too much and she was returning home in a lot of pain and simply could not do it any more. (Tr. 478-79, 484.) She testified that she is unable to sit or stand for too long. She testified that she is able to lift her daughter, who weighs about twenty- six pounds, but that her back will hurt the following day as a result. (Tr. 480.) She testified that she currently has tingling and numbness in her fingers and hands. (Tr. 484.)

Plaintiff testified that she used to have a drinking problem but has not had a drink since 2004. (Tr. 481.) She testified that she spends the day sitting with her daughter, watching TV, and reading. (Tr. 481.) She testified that she rises about 6:00 or 7:00 a.m. and

takes naps when her daughter does. She testified that she was diagnosed with spinal stenosis around 2002. (Tr. 482.)

### III. DECISION OF THE ALJ

The ALJ found that plaintiff was not fully credible about her limitations. He found that she had not engaged in substantial gainful activity since the alleged date of disability. The ALJ found that a combination of plaintiff's impairments, including cervical and lumbar muscle spasms, hepatitis C, and hypertension were severe in combination. (Tr. 18.) The ALJ found, however, that the combination of plaintiff's impairments did not meet or medically equal a listed impairment. (Tr. 22.) The ALJ discussed plaintiff's other alleged impairments including finger and hand pain, seizures, and depression, which he found were not severe. (Tr. 18.) The ALJ also discussed plaintiff's subjective complaints of pain. (Tr. 20-21.)

The ALJ found that plaintiff had no past relevant work. The ALJ determined that plaintiff had the residual functional capacity (RFC) to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand, and walk for six hours each in an eight-hour workday. (Tr. 21.) The ALJ determined that plaintiff was a "younger individual," that she was a high school graduate, and that her previous work was unskilled. (Tr. 21.) The ALJ then applied the Medical-Vocational Guidelines (the Grids). Citing Rule 202.20, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy when her vocational factors and RFC were considered. (Tr. 21.) Accordingly, the ALJ found plaintiff was not disabled under the Act.

### IV. GENERAL LEGAL PRINCIPLES

The court's task is to determine whether the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining

whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work. Id. The claimant bears the burden of demonstrating she is no longer able to return to her past relevant work. Id. If the Commissioner determines the claimant cannot return to past relevant work, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues the ALJ erred in (1) failing to recognize the combined effects of her impairments; (2) failing to give appropriate

weight to her subjective complaints; and (3) failing to identify specific jobs that she could perform at Step Five of the analysis.

**A.  Combined Effects of Impairments**

Plaintiff argues the ALJ erred in failing to recognize the combined effects of her impairments, specifically, hepatitis C, hypertension, neck and back pain, degenerative disc disease, and depression.  The undersigned disagrees.

An ALJ sufficiently considers a claimant's impairments in combination when he has separately discusses each impairment, the complaints of pain, as well as daily activities, and finds that plaintiff's impairments did not prevent her from performing her past relevant work.  See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable."  Id.; see also 20 C.F.R. §§ 404.1523, 416.923.

In this case, the ALJ specifically found that a combination of plaintiff's impairments, including cervical and lumbar muscle spasms, hepatitis C, and hypertension were severe in combination.  (Tr. 18.)  In addition, the ALJ discussed plaintiff's other alleged impairments, including vision impairment, finger and hand pain, seizures, and depression, and concluded they were not severe.  (Tr. 18.)  The ALJ found that the combination of plaintiff's impairment did not meet or medically equal a listed impairment.  (Tr. 22.)  The undersigned therefore concludes that the ALJ properly considered the combined effects of plaintiff's impairments.

**B.  Credibility of Subjective Complaints**

Plaintiff next argues the ALJ erred in failing to give appropriate weight to her subjective complaints.  She argues that the ALJ should have accorded greater weight to her testimony regarding pain rather than requiring her to provide objective evidence of pain.  This court disagrees.

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.  Pearsall v. Massanari, 274 F.3d

1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

In this case the ALJ discussed plaintiff's subjective complaints of pain and considered a number of factors before determining that plaintiff's subjective complaints were not fully credible. (Tr. 21.) The ALJ noted that the objective medical evidence was inconsistent with plaintiff's reports of disabling symptoms. (Tr. 21). In January 2007, plaintiff had normal range of motion in all joints and her spine, as well as normal muscle strength and sensation. Her gait and stance were normal. Straight leg raising was negative. (Tr. 206.) X-rays of her spine showed normal disc space height and normal joints. (Tr. 207.) An MRI showed asymmetry at C4-5, but there was no spinal canal stenosis or ruptured discs. (Tr. 207.) Another MRI in August 2007 showed mild degenerative changes in the cervical spine, no abnormality in the dorsal spine, and an "essentially negative" lumbar spine with a "small indentation" of the thecal sac at L3-4 with no nerve root compression. (Tr. 249-50A.) See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (although an ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, a lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's credibility).

The ALJ also noted that plaintiff's impairments responded to treatment. (Tr. 21.) In December 2006, after plaintiff was treated for hepatitis C, Dr. Salamat found no abnormalities on examination. (Tr. 187.) Dr. Salamat opined at that time that plaintiff's hepatitis C required close monitoring, but no additional treatment. (Tr. 188.) Testing for hepatitis C in August 2007 was negative. (Tr. 195.) Plaintiff's hepatitis C was again in remission in March 2008, three months after treatment was stopped. (Tr. 194.) See Kelley v. Callahan,

133 F.3d 583, 589 (8th Cir. 1998)(impairments that are controllable or amenable to treatment do not support a finding of disability).

The ALJ also considered plaintiff's work history, noting she had a history of short-term employment and low earnings. (Tr. 21, 134.) See Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("a lack of work history may indicate a lack of motivation to work rather than a lack of ability"; claimant's credibility is lessened by a poor work history). The undersigned concludes that based on all of these factors, the ALJ properly concluded that plaintiff's subjective complaints were not entirely credible. (Tr. 21.) The ALJ's consideration of the subjective aspects of plaintiff's complaints was consistent with the regulations at 20 C.F.R. § 404.1529 (2009), S.S.R. 96-7p, and the framework set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Because the ALJ articulated the inconsistencies on which he relied in discrediting plaintiff's subjective complaints, and because those inconsistencies are supported by the record, the ALJ's credibility finding is affirmed.

**C.    Use of the Grids**

Plaintiff next argues that the ALJ erred by failing to identify specific jobs that she could perform at Step Five of his analysis. The undersigned disagrees.

In this case the ALJ determined that plaintiff had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand, and walk for six hours each in an eight-hour workday. (Tr. 21.) This corresponds with the ability to perform light exertional level work as defined by the regulations. See 20 C.F.R. §§ 404.1567(b), 416.927(b). The ALJ then applied the Medical-Vocational Guidelines or Grids. (Tr. 21). The preamble to the Grids states:

> The existence of jobs in the national economy is reflected in the "Decisions" shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the "Dictionary of Occupational Titles" and the "Occupational Outlook Handbook," published by the Department of Labor; the "County Business Patterns" and "Census Surveys" published by

>     the Bureau of the Census; and occupational surveys of light
>     and sedentary jobs prepared for the Social Security
>     Administration by various State employment agencies. Thus,
>     when all factors coincide with the criteria of a rule, the
>     existence of such jobs is established.

20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). Thus, the regulations provide that when an individual meets all of the requirements of a particular Grid rule, the Grids may be used to satisfy the Commissioner's burden at Step Five of establishing that the claimant can perform other jobs that exist in significant numbers in the national economy. Id. When an ALJ properly relies on a particular Grid rule to find a claimant not disabled, the ALJ is not required to provide specific job titles. See 20 C.F.R. §§ 404.1569, 416.969.

In this case, the ALJ properly determined that plaintiff was a "younger individual," a high school graduate, and that her previous work was unskilled. (Tr. 21.) Grid Rule 202.20 provides that an individual of plaintiff's age, education, and experience, who retains the ability to perform light exertional level work, is not disabled. 20 C.F.R. pt. 404, Subpart P, Appendix 2, Table No. 2. Thus, the undersigned concludes the ALJ properly applied the Grids at Step Five of the sequential evaluation process.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.


   /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 28, 2010.